UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**0 2 - 2 0 5 4 7 CR - HUCK**

CASE NO._____

MAGISTRATE JUDGE
TURNOFF

18 U.S.C. § 1956(a)(2)(A)
18 U.S.C. § 1346
18 U.S.C. § 1343
18 U.S.C. § 1341
18 U.S.C. § 371
18 U.S.C. § 2
15 U.S.C. § 78j(b)
17 C.F.R. § 240.10b-5

UNITED STATES OF AMERICA

v.

HOWARD E. KERBEL,
BARRY BERMAN,
DENNIS EPSTEIN,
KENNETH B. LIEBSCHER,
MELVIN L. LEVINE,
  a/k/a "Mel Levine,"
and
VINCENT BARONE,
  a/k/a "Vince Barone,"



FILED BY _____ D.C.
MAG. SEC.

JUL 2 5 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • MIAMI

                    Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

## COUNT 1

## CONSPIRACY TO COMMIT WIRE, MAIL AND SECURITIES FRAUD

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.        ThermoElastic Technologies, Inc. ("TMRO") was a Colorado corporation with its

offices in Blaine, Washington and Toronto, Ontario, Canada. TMRO was purportedly in the business of marketing and distributing, among other things, products in the dental field.

2.     TMRO was a publicly-traded company, with its common stock registered with the United States Securities and Exchange Commission ("SEC").  TMRO stock traded in the United States on the over-the-counter bulletin board ("OTCBB") market. The OTCBB was a market for equity securities traded over-the-counter that were neither listed on NASDAQ nor on a primary national securities exchange such as the New York Stock Exchange. TMRO had no significant revenue derived from its operations and had net losses of more than $3.1 million for the six-month period ended March 31, 2002.  As of January 14, 2002, TMRO had one full-time employee.

3.     Defendant **HOWARD E. KERBEL** was a founder of TMRO.  Through nominees, he controlled a significant amount of TMRO stock.  He was purportedly an attorney in Toronto, Canada.

4.     Defendant **BARRY BERMAN** was a founder of TMRO. Through nominees, he controlled a significant amount of TMRO stock.  He was purportedly a retired dentist in Toronto, Canada.

5.     Defendant **DENNIS EPSTEIN** was a founder of TMRO.  He was the chairman of the board of TMRO.  Through nominees, he controlled a significant amount of TMRO stock. He was a consultant in Toronto, Canada.

6.     Defendant **KENNETH B. LIEBSCHER** was the president and a director of TMRO.  Through nominees, he controlled a significant amount of TMRO stock.

7.     Defendant **MELVIN L. LEVINE** was a stock promoter, based in Pompano Beach, Florida.

8.     Defendant **VINCENT BARONE** was a New York-based securities broker licensed by the National Association of Securities Dealers.

2

9.      An agent of the Federal Bureau of Investigation, acting in an undercover capacity (the "UCA"), posed as a corrupt securities trader for Connelly & Williams Associates, Inc. ("Connelly & Williams"), the United States-based representative of a fictitious foreign mutual fund ("the Fund") that had a number of investors who had invested millions of dollars. In his role as a corrupt securities trader, the UCA claimed that he worked for Connelly & Williams with two due diligence officers whose job was to research and approve which securities the UCA would be allowed to purchase through Connelly & Williams on behalf of the Fund's investors. The UCA also claimed that a purported manager of the Fund was corrupt and had knowledge of the UCA's corrupt activities concerning the Fund.

10.     Two cooperating witnesses (collectively, the "CWs") also assisted in the undercover operation, posing as corrupt stock promoters who presented prospective stock deals to the Fund through the UCA.

11.     Southern Star Shipping, Ltd. ("Southern Star") was purportedly a Swiss company that the UCA used to receive illegal kickback payments.

12.     International Corporate Structures, Inc. ("ICS") was a St. Michaels, Barbados-based entity controlled by defendant **HOWARD E. KERBEL**, on behalf of defendants **BARRY BERMAN, DENNIS EPSTEIN** and **KENNETH B. LIEBSCHER**. These defendants agreed to use ICS to sell TMRO stock to Connelly & Williams and to pay a portion of the illegal kickbacks to Southern Star.

## THE CONSPIRACY

13.      From in or about October 2000, to in or about June 2002, at Miami-Dade and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**HOWARD E. KERBEL,
BARRY BERMAN,
DENNIS EPSTEIN,
KENNETH B. LIEBSCHER,
MELVIN L. LEVINE,
a/k/a "Mel Levine,"
and
VINCENT BARONE,
a/k/a "Vince Barone,"**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

        a.      wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346;

        b.      mail fraud, in violation of Title 18, United States Code, Sections 1341 and 1346; and

        c.      securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

## PURPOSES AND OBJECTS OF THE CONSPIRACY

14.      It was the purpose and object of the conspiracy for defendants **HOWARD E. KERBEL, BARRY BERMAN, DENNIS EPSTEIN, KENNETH B. LIEBSCHER** and **MELVIN L. LEVINE** to unlawfully enrich themselves by defrauding the Fund through paying undisclosed kickbacks to the UCA, CWs, a purported corrupt Fund manager and two purported due diligence officers of Connelly & Williams, in exchange for their causing the Fund to purchase a large amount of overpriced TMRO stock.  It was also the purpose and object of the conspiracy for

4

defendants **HOWARD E. KERBEL, BARRY BERMAN, MELVIN L. LEVINE** and **VINCENT BARONE** to unlawfully enrich themselves by defrauding the stockholders of TMRO by artificially affecting the supply and demand for TMRO stock in order to inflate the market price of TMRO stock through illegal means.

<u>**MANNER AND MEANS OF THE CONSPIRACY**</u>

The manner and means by which the defendants sought to accomplish the objects of the conspiracy included, among others, the following:

15. Defendants **HOWARD E. KERBEL, BARRY BERMAN, DENNIS EPSTEIN** and **KENNETH B. LIEBSCHER** agreed to pay undisclosed kickbacks to defendant **MELVIN L. LEVINE,** the UCA and others at the Fund so that they would violate their fiduciary obligations by purchasing a large amount of overpriced TMRO stock with the Fund's money.

16. Defendants **HOWARD E. KERBEL, BARRY BERMAN, DENNIS EPSTEIN** and **KENNETH B. LIEBSCHER** agreed to sell approximately 20,000,000 shares of TMRO stock at $0.20 per share (totaling $4,000,000) to Connelly & Williams, on behalf of the Fund. At the time, the prevailing market price of TMRO stock was less than $0.10 per share. The sources of the TMRO shares were to be TMRO and ICS. The Fund was to purchase these shares in two separate transactions.

17. Defendants **HOWARD E. KERBEL, BARRY BERMAN, DENNIS EPSTEIN** and **KENNETH B. LIEBSCHER** agreed to pay approximately 30% of the $4,000,000 purchase price as the undisclosed kickback to defendant **MELVIN L. LEVINE,** the UCA, CWs and a purported corrupt manager of the Fund in order to induce the Fund to purchase overpriced TMRO stock rather than shares of another company's stock.

18. Defendants **HOWARD E. KERBEL, BARRY BERMAN, DENNIS EPSTEIN** and **KENNETH B. LIEBSCHER** agreed to conceal and disguise the 30% or $1,200,000 undisclosed

5

kickback payments to defendant **MELVIN L. LEVINE**, the UCA, CWs and a purported corrupt manager of the Fund by creating sham consulting agreements between TMRO and Southern Star and ICS and Southern Star, and wiring the kickbacks to an offshore bank account under the name of Southern Star.

19. Defendants **HOWARD E. KERBEL, BARRY BERMAN, KENNETH B. LIEBSCHER** and **MELVIN L. LEVINE** agreed to complete a "test" trade of a smaller amount of TMRO stock in order to get TMRO placed on the Fund's list of stocks approved for purchase, which then would allow the UCA to execute the larger $4,000,000 TMRO stock trades at later dates.

20. As part of the "test" trade, defendants **HOWARD E. KERBEL, BARRY BERMAN** and **KENNETH B. LIEBSCHER** agreed to sell to the Fund two allotments of 50,000 shares of TMRO stock at $0.20 per share (totaling $20,000), one allotment from TMRO and the other from ICS, and send an undisclosed kickback payment of $10,000 to the UCA for further transfer to the two purported due diligence officers of Connelly & Williams in exchange for their placing TMRO stock on the Fund's list of stocks approved for purchase.

21. Defendants **HOWARD E. KERBEL, BARRY BERMAN** and **KENNETH B. LIEBSCHER** agreed that the undisclosed kickback payment of $10,000 to the UCA would be concealed and disguised as a fee for research purportedly conducted by the UCA for ICS by creating a false ICS receipt reflecting payment of a $10,000 fee for "research related to emerging growth companies."

22. Defendants **HOWARD E. KERBEL** and **BARRY BERMAN** agreed to recruit two sets of securities brokers, through defendant **MELVIN L. LEVINE** and defendant **VINCENT BARONE**, respectively, to assist in artificially inflating the market price of TMRO stock by making illegal payments to securities brokers who would recommend and sell shares of TMRO stock to their unwitting customers rather than shares of another company's stock.

6

23.     Defendants **HOWARD E. KERBEL** and **BARRY BERMAN** agreed to provide defendant **VINCENT BARONE** with approximately 2,000,000 shares of TMRO stock which, in turn, the Fund would purchase from defendant **VINCENT BARONE** at $0.20 per share, or $400,000.  Defendant **VINCENT BARONE** agreed to take the $400,000 as a fee for his assistance in artificially increasing the market price of TMRO stock through illegal means.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

24.     On or about October 16, 2000, during an international telephone call, defendants **HOWARD E. KERBEL, BARRY BERMAN** and **MELVIN L. LEVINE** initially presented the TMRO stock purchase deal to the UCA and CWs.

25.     On or about November 2, 2001, during a telephone call, defendant **MELVIN L. LEVINE** renewed the discussion with the UCA and CWs regarding the TMRO stock purchase deal.

26.     On or about December 18, 2001, defendant **MELVIN L. LEVINE** met with the UCA and a CW in Boca Raton, Florida, and discussed that defendants **HOWARD E. KERBEL** and **BARRY BERMAN** were interested in presenting the TMRO stock manipulation scheme to the UCA and CWs.

27.     On or about January 11, 2002, defendants  **HOWARD E. KERBEL** and **MELVIN L. LEVINE**, the UCA and CWs further discussed the TMRO stock manipulation scheme, including discussing prior efforts undertaken by defendant **VINCENT BARONE** to illegally manipulate the market price of TMRO stock on behalf of defendants **HOWARD E. KERBEL** and **BARRY BERMAN**.

7

28.     On or about January 11, 2002, during an international telephone call with the UCA and CWs, defendant **HOWARD E. KERBEL** stated that he was interested in traveling from Canada to Florida, to further discuss TMRO with the UCA and CWs.

29.     On or about January 14, 2002, during an international telephone call, defendants **HOWARD E. KERBEL** and **BARRY BERMAN** discussed with the UCA and CWs the proposal for the TMRO stock purchase-kickback and stock manipulation schemes.

30.     On or about January 22, 2002, defendant **BARRY BERMAN** met with the UCA and CWs in Boca Raton, Florida, to further discuss the TMRO stock purchase-kickback and stock manipulation schemes.

31.     On or about January 25, 2002, defendants **HOWARD E. KERBEL, BARRY BERMAN** and **MELVIN L. LEVINE** met with the UCA and CWs in Boca Raton, Florida, to further discuss the TMRO stock purchase-kickback and stock manipulation schemes.

32.     On or about January 28, 2002, defendant **HOWARD E. KERBEL** caused to be transmitted, via facsimile, to the UCA and CWs a hand-written note with TMRO's Letter of Intent for its sale of 5,050,000 shares of TMRO stock to Connelly & Williams, signed by defendant **KENNETH B. LIEBSCHER.**

33.     On or about February 5, 2002, defendants **HOWARD E. KERBEL** and **BARRY BERMAN** caused TRMO and ICS to each sell 50,000 shares of TRMO stock at $0.20 per share (100,000 shares x $0.20 per share = $20,000) to Connelly & Williams, on behalf of the Fund.

34.     On or about February 8, 2002, during an international telephone call, defendant **DENNIS EPSTEIN** discussed with the UCA and CWs the TMRO stock purchase-kickback scheme.

35.     On or about February 8, 2002, during an interstate telephone call, defendant **KENNETH B. LIEBSCHER** discussed with the UCA and CWs the TMRO stock purchase-kickback scheme.

36.     On or about February 15, 2002, defendant **VINCENT BARONE** met and discussed with the UCA and CWs in Boca Raton, Florida, the TMRO stock purchase-kickback and stock manipulation schemes, including defendant **VINCENT BARONE**'s proposal to pay a stock analyst in California $20,000 to write a favorable, "independent" research analyst report concerning TMRO and its operations.

37.     On or about February 15, 2002, during an international telephone call, defendants **HOWARD E. KERBEL, BARRY BERMAN** and **VINCENT BARONE** discussed with the UCA and CWs how defendant **VINCENT BARONE** would be illegally compensated for his efforts in the TMRO stock manipulation scheme.

38.     The wire communications, as set forth in Counts 2 through 11 of this Indictment, the mailing, as set forth in Count 12 of this Indictment, the securities transactions, as set forth in Counts 13 through 15 of this Indictment, and the money laundering transaction, as set forth in Count 16 of this Indictment, are incorporated herein and realleged as though restated as individual overt acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 371.

9

## COUNTS 2-11

### WIRE FRAUD

1.      The allegations of paragraphs 1 through 12 and 15 through 38 of Count 1 of this Indictment are realleged and incorporated herein by reference.

2.      From in or about October 2000, to in or about June 2002, at Miami-Dade and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**HOWARD E. KERBEL,**
**BARRY BERMAN,**
**KENNETH B. LIEBSCHER**
**and**
**VINCENT BARONE,**
**a/k/a "Vince Barone,"**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and deprive others of the intangible right of honest services, and to obtain money and property from others by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations and promises were false when made.

3.      On or about the dates specified as to each count below, the defendants, as named below, for the purpose of executing the aforesaid scheme and artifice to defraud and deprive others of the intangible right of honest services, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described in each count below:

| COUNT | APPROX. DATE | DEFENDANTS | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 2 | Jan. 23, 2002 | HOWARD E. KERBEL, BARRY BERMAN, and KENNETH B. LIEBSCHER | E-mail transmission containing a message with an attached draft, "blank" Subscription Agreement for the TMRO stock purchase-kickback scheme, sent over the Internet by defendant **HOWARD E. KERBEL** from "gritell@on.aibn.com" in Canada, to a CW in Boca Raton, Florida |
| 3 | Jan. 23, 2002 | HOWARD E. KERBEL, BARRY BERMAN, and KENNETH B. LIEBSCHER | Facsimile transmission containing a cover sheet referring to an earlier telephone conversation on Jan. 23, 2002 and attached Letter of Intent between TMRO and Connelly & Williams, executed by defendant **KENNETH B. LIEBSCHER**, sent by defendant **HOWARD E. KERBEL** in Toronto, Canada, to a CW in Boca Raton, Florida |
| 4 | Jan. 30, 2002 | HOWARD E. KERBEL, BARRY BERMAN, and KENNETH B. LIEBSCHER | E-mail transmission containing a message regarding the "details of the shareholder participation in International Corporate Structure's [sic] Letter of Intent," sent over the Internet by defendant **HOWARD E. KERBEL** from "gritell@on.aibn.com" in Canada, to a CW in Boca Raton, Florida |

11

| 5 | Jan. 30, 2002 | **HOWARD E. KERBEL, BARRY BERMAN and KENNETH B. LIEBSCHER** | E-mail transmission containing a message with attached draft, "blank" Business Consulting Agreement for the TMRO stock purchase-kickback scheme and draft TMRO Subscription Agreement for sale of 5,000,000 shares of TMRO stock to Connelly and Williams, sent over the Internet by defendant **HOWARD E. KERBEL** from "gritell@on.aibn.com" in Canada, to a CW in Boca Raton, Florida |
| 6 | Jan. 31, 2002 | **HOWARD E. KERBEL, BARRY BERMAN and KENNETH B. LIEBSCHER** | E-mail transmission containing a message regarding the "wiring instructions requested" for TMRO and International Corporate Structures, Inc. [for the "test" trade], sent over the Internet by defendant **HOWARD E. KERBEL** from "gritell@on.aibn.com" in Canada, to a CW in Boca Raton, Florida |
| 7 | Jan. 31, 2002 | **HOWARD E. KERBEL, BARRY BERMAN and KENNETH B. LIEBSCHER** | Facsimile transmission containing a cover sheet with hand-written note and attached ICS Letter of Intent, executed by an ICS representative, sent by defendant **HOWARD E. KERBEL** in Toronto, Canada, to a CW in Boca Raton, Florida |
| 8 | Feb. 1, 2002 | **HOWARD E. KERBEL, BARRY BERMAN and KENNETH B. LIEBSCHER** | Facsimile transmission containing a transmittal note and seven documents relating to the TMRO stock purchase-kickback scheme, sent by the UCA and a CW in Boca Raton, Florida to defendant **HOWARD E. KERBEL** in Toronto, Canada |

| 9 | Feb. 7, 2002 | **HOWARD E. KERBEL, BARRY BERMAN and KENNETH B. LIEBSCHER** | Bank wire-transfer of $10,000 "test" trade undisclosed kickback from an ICS bank account in Barbados to the UCA's bank account in Miami, Florida |
|---|---|---|---|
| 10 | Feb. 7, 2002 | **HOWARD E. KERBEL, BARRY BERMAN and KENNETH B. LIEBSCHER** | Facsimile transmission containing a cover sheet and an attached Business Consulting Agreement between ICS and Southern Star, executed by a representative of ICS, sent by defendant **HOWARD E. KERBEL** in Toronto, Canada, to "Southern Star Shipping" at the facsimile number of the UCA in Boca Raton, Florida |
| 11 | Feb. 8, 2002 | **HOWARD E. KERBEL, BARRY BERMAN and VINCENT BARONE,** a/k/a "Vince Barone" | Telephone conference call between defendant **VINCENT BARONE** in New York and the UCA and CWs in Boca Raton, Florida, discussing the TMRO stock manipulation scheme |

All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

## COUNT 12

## MAIL FRAUD

1.　　The allegations of paragraphs 1 through 12 and 15 through 38 of Count 1 of this Indictment are realleged and incorporated herein by reference.

2.　　From in or about October 2000, to in or about June 2002, at Miami-Dade and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**HOWARD E. KERBEL,**
**BARRY BERMAN**
**and**
**KENNETH B. LIEBSCHER,**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and deprive others of the intangible right of honest services, and to obtain money and property from others by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations and promises were false when made.

3.　　On or about February 4, 2002, the defendants, for the purpose of executing the aforesaid scheme and artifice to defraud and deprive others of the intangible right of honest services, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, and attempting to do so, did knowingly cause to be delivered to Connelly & Williams in Boca Raton, Florida, by private and commercial interstate carrier, that is, United Parcel Service (UPS), according to the directions thereon, a package containing: an executed Stock Purchase Agreement for the sale of 50,000 shares of TMRO stock by ICS to Connelly & Williams; a Stock Certificate (No. 1233) for 50,000 shares of TMRO stock; an executed Stock Purchase Agreement for the sale of 15,000,000 shares of TMRO stock by ICS to Connelly &

14

Williams; an executed Business Consulting Agreement between TMRO and Southern Star; an executed Subscription Agreement for the sale of 50,000 shares of TMRO stock by TMRO to Connelly & Williams; a Stock Certificate (No. 1225) for 50,000 shares of TMRO stock; and a proposed Subscription Agreement between TMRO and Connelly & Williams for 5,000,000 [sic] shares of TMRO stock.

All in violation of Title 18, United States Code, Sections 1341, 1346 and 2.

## COUNTS 13-15

### SECURITIES FRAUD

1.      The allegations of paragraphs 1 through 12 and 15 through 38 of Count 1 of this Indictment are realleged and incorporated herein by reference.

2.      On or about the dates specified as to each count below, at Miami-Dade and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants, as named below, knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, did, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of a security, and did (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon others, in connection with the purchase and sale of a security, as more particularly described in each count below:

15

| COUNT | APPROX. DATE | DEFENDANTS | DESCRIPTION OF SECURITIES TRANSACTION |
|---|---|---|---|
| 13 | Feb. 2002 | HOWARD E. KERBEL, BARRY BERMAN and KENNETH B. LIEBSCHER | Sale of 50,000 shares of ThermoElastic Technologies, Inc. (TMRO) from TMRO to Connelly & Williams |
| 14 | Feb. 2002 | HOWARD E. KERBEL, BARRY BERMAN and KENNETH B. LIEBSCHER | Sale of 50,000 shares of ThermoElastic Technologies, Inc. (TMRO) from ICS to Connelly & Williams |
| 15 | Feb. 2002 | HOWARD E. KERBEL, BARRY BERMAN and VINCENT BARONE, a/k/a "Vince Barone" | Fraudulent scheme to recruit corrupt securities brokers and others to assist in manipulating market price of TMRO stock |

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a); Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

## COUNT 16

## MONEY LAUNDERING

## INTERNATIONAL TRANSPORTATION OF MONETARY INSTRUMENTS

1.      The allegations of paragraphs 1 through 12 and 15 through 38 of Count 1 of this Indictment are realleged and incorporated herein by reference.

16

2.    On or about February 7, 2002, at Miami-Dade and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**HOWARD E. KERBEL,**
**BARRY BERMAN**
**and**
**KENNETH B. LIEBSCHER,**

did knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer funds, that is, a $10,000 bank wire-transfer, from a place outside the United States, that is, St. Michaels, Barbados, to a place in the United States, that is, Miami, Florida, with the intent to promote the carrying on of specified unlawful activity, specifically, wire and mail fraud, in violation of Title 18, United States Code, Sections 1343, 1341 and 1346 and securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

A TRUE BILL

_____
FOREPERSON


_____
GUY A. LEWIS
UNITED STATES ATTORNEY


_____
RICHARD HONG
ASSISTANT UNITED STATES ATTORNEY

17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

02 - 20547 CR - HUCK

v.

**CERTIFICATE OF TRIAL ATTORNEY\***

MAGISTRATE JUDGE
TURNOFF

HOWARD E. KERBEL, et al.,

**Superseding Case Information:**

_____/

New Defendant(s)      Yes _____      No _____
Number of New Defendants _____
Total number of counts _____

**Court Division:** (Select One)

_X_ Miami  ___ Key West
___ FTL   ___ WPB   ___ FTP

FILED by _____ D.C.

MAG. SEC.

JUL 2 5 2002

CLERK U.S. DIST.
S.D. OF FLA. · MIAMI

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:        (Yes or No) _____ No _____
    List language and/or dialect _____

4.  This case will take _20_ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:
    (Check only one)                              (Check only one)

    | | | | | | |
    |---|---|---|---|---|---|
    | I | 0 to 5 days | _____ | Petty | | _____ |
    | II | 6 to 10 days | _____ | Minor | | _____ |
    | III | 11 to 20 days | _x_ | Misdem. | | _____ |
    | IV | 21 to 60 days | _____ | Felony | | _x_ |
    | V | 61 days and over | _____ | | | |

6.  Has this case been previously filed in this District Court? (Yes or No) _No_
    If yes:
    Judge: _____   Case No. _____
    (Attach copy of dispositive order)

    Has a complaint been filed in this matter?     (Yes or No) _____ No _____
    If yes:
    Magistrate Case No. _____
    Related Miscellaneous numbers: _____
    Defendant in federal custody as of _____
    Defendant(s) in state custody as of _____
    Rule 20 from the _____   District of _____

    Is this a potential death penalty case? (Yes or No) _____ NO _____

7.  Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? _X_ Yes __ No   If yes, was it pending in the Central Region? _X_ Yes __ No

8.  Did this case originate in the Narcotics Section, Miami? __ Yes _X_ No

RICHARD HONG
Assistant U.S. Attorney
Court Bar No. A 5500374

\*Penalty Sheet(s) attached

REV.6/27/00

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**02-20547 CR-HUCK**

PENALTY SHEET

Defendant's Name:   **VINCENT BARONE, a/k/a "Vince Barone"**

Case No:_____

Count #_1_ :         Conspiracy to Commit Wire, Mail and Securities Fraud
                     18 USC 371

**\* Max. Penalty:**      5 years' imprisonment

Count # _11_ :        Wire Fraud
                      18 USC 1343, 1346

**\*Max. Penalty:**       5 years' imprisonment

Count # _15_ :        Securities Fraud
                      15 USC 78j(b), 78ff(a) and 2

**\*Max. Penalty:**       10 years' imprisonment

Count # ____:

                      FILED by _____ D.C.
                      MAG. SEC.

**\*Max. Penalty:**

                      JUN 2 5 2002

                      CLARENCE MADDOX
                      CLERK U.S. DIST. CT.
                      S.D. OF FLA. - MIAMI

Count # ____:

**\*Max. Penalty:**

_____

_____

_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

02- 20547 CR-HUCK

Defendant's Name:   **MELVIN L. LEVINE, a/k/a "Mel Levine"**

Case No:

Count #_1_ :        Conspiracy to Commit Wire, Mail and Securities Fraud
                    18 USC 371

**\* Max. Penalty:**    5 years' imprisonment

Count # _____: 

**\*Max. Penalty:**

Count # _____:

FILED by _____ D.C.
MAG. SEC.

JUN 2 5 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**\*Max. Penalty:**

Count # _____:

**\*Max. Penalty:**

Count # _____:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**02 - 2 0 5 4 7 CR - HUCK**

PENALTY SHEET

Defendant's Name:___**KENNETH B. LIEBSCHER**_____

Case No:_____

Count #__1__:      Conspiracy to Commit Wire, Mail and Securities Fraud
                   18 USC 371

**\* Max. Penalty:**    5 years' imprisonment

Counts # __2 - 11__:   Wire Fraud
                       18 USC 1343, 1346

**\*Max. Penalty:**     5 years' imprisonment

Count # __12__:    Mail Fraud
                   18 USC 1341, 1346

**\*Max. Penalty:**     5 years' imprisonment

Counts # __13-14__:    Securities Fraud
                       15 USC 78j(b), 78ff(a) and 2

**\*Max. Penalty:**     10 years' imprisonment

Count # __16__:    Money Laundering
                   18 USC 1956(a)(2)(A)

**\*Max. Penalty:**     20 years' imprisonment

Count # _____:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

FILED by _____ D.C.
MAG. SEC.

JUN 2 5 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**02-20547 CR-HUCK**

PENALTY SHEET

**Defendant's Name:** __DENNIS EPSTEIN__

**Case No:**_____

Count #_1_ :          Conspiracy to Commit Wire, Mail and Securities Fraud
                      18 USC 371

**\* Max. Penalty:**     5 years' imprisonment

Count # ____:

**\*Max. Penalty:**

FILED by _____ D.C.
MAG. SEC.

JUN 2 5 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. FLA. • MIAMI

Count # ____:

**\*Max. Penalty:**

Count # ____:

**\*Max. Penalty:**

Count # ____:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**02-20547 CR-HUCK**

PENALTY SHEET

**Defendant's Name:___HOWARD E. KERBEL___**

**Case No:_____**

Count #__1__:    Conspiracy to Commit Wire, Mail and Securities Fraud
         18 USC 371

__* Max. Penalty:__    5 years' imprisonment

Counts #__2 - 11__:    Wire Fraud
         18 USC 1343, 1346

__*Max. Penalty:__    5 years' imprisonment

FILED by _____ D.C.
MAG. SEC.

JUN 2 5 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

Count #__12__:    Mail Fraud
         18 USC 1341, 1346

__*Max. Penalty:__    5 years' imprisonment

Counts #__13-15__:    Securities Fraud
         15 USC 78j(b), 78ff(a) and 2

__*Max. Penalty:__    10 years' imprisonment

Count #__16__:    Money Laundering
         18 USC 1956(a)(2)(A)

__*Max. Penalty:__    20 years' imprisonment

Count #_____:

__*Max. Penalty:__

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**02 - 20547 CR - HUCK**

### PENALTY SHEET

**Defendant's Name:__ BARRY BERMAN**

**Case No:**

**Count #__1__:**    Conspiracy to Commit Wire, Mail and Securities Fraud
18 USC 371

__* Max. Penalty:__    5 years' imprisonment

**Counts # __2 - 11__:**    Wire Fraud
18 USC  1343, 1346

FILED by _____ D.C.
MAG. SEC.

JUN 2 5 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

__*Max. Penalty:__    5 years' imprisonment

**Count # __12__:**    Mail Fraud
18 USC  1341, 1346

__*Max. Penalty:__    5 years' imprisonment

**Counts # __13-15__:**    Securities Fraud
15 USC  78j(b), 78ff(a) and 2

__*Max. Penalty:__    10 years' imprisonment

**Count # __16__:**    Money Laundering
18 USC 1956(a)(2)(A)

__*Max. Penalty:__    20 years' imprisonment

**Count # ____:**

**_*Max. Penalty:_**

**_*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable._**